UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-288 (PJS)

UNITED STATES OF AMERICA,

     Plaintiff,

              **GOVERNMENT'S POSITION WITH**
 v.            **RESPECT TO SENTENCING**

CALEB VINCENT MCLAUGHLIN,    <u>**REDACTED**</u>
  a/k/a "Jake Benson,"
  a/k/a "Lift11,"
  a/k/a "Tech4cm,"

     Defendant.

   The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Hillary A. Taylor and Rachel L. Kraker, Assistant United States Attorneys, hereby respectfully submits its memorandum in support of its position with respect to the sentencing of Defendant Caleb Vincent McLaughlin.

   McLaughlin is a prolific child predator and rapist. Since at least 2019, McLaughlin used Snapchat to groom, sexually exploit, and abuse over 200 minor victims, 26 of whom have been identified. McLaughlin targeted vulnerable minors not only to satisfy his appetite for images of the sexual abuse of children, but also to coerce minor victims to meet him in person so he could sexually abuse them, often documenting that abuse in videos. McLaughlin lured these minors with promises of money, alcohol, marijuana, vape pens, and other gifts if they sent him sexually explicit images and videos, engaged in explicit video chats, or met him in person to engage in sex acts with him.

In his predation, McLaughlin showed a pronounced sexual interest in preteen and teenage girls, incest, bestiality, and bondage, domination, sadism, and masochism (BDSM). Power, control, and cruelty were not just side effects for McLaughlin in his scheme—they were the point. McLaughlin engineered his offense conduct to ensure that children would feel isolated and vulnerable and would do as he said. Many of McLaughlin's child victims have reported feeling like they were somehow to blame for being preyed upon, when McLaughlin alone was the calculated perpetrator, scouring social media for his next victim to use and abuse. His conduct also continues to isolate the minor victims and their families today, leaving them afraid to trust people online and in their community, concerned about revealing that they were victimized, and suffering their shame, anger, and frustration alone.

For the reasons set forth below, the Government requests that the Court impose a sentence of 420 months' imprisonment and a lifetime term of supervised release with special conditions.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Instant Offense[1]

#### 1.   Overview

Since at least 2019, McLaughlin used the internet to hunt for young, vulnerable girls who he could use and consume for his sexual gratification. (PSR ¶¶ 11-26.) Often using

---

[1] The Government agrees with the factual basis in the PSR. While the individual accounts of all the minor victims is important, the following is a summary intended to illustrate McLaughlin's predation and offense conduct involving the 26 positively identified victims over five years.

the alias "Jake" and lying about his age to pose as someone younger, McLaughlin messaged hundreds of minor girls between the ages of 11 to 17 years old, frequently steering conversations to sexualized topics in a short amount of time. (*Id.*) McLaughlin would show interest in the minor victims. He would call them "sexy" and direct them to send him sexually explicit images of themselves. McLaughlin's scheme was clear—he built false relationships with minors seeking child pornography depicting them, and his online exploitation of minors laid the groundwork for his ultimate goal: McLaughlin wanted to sexually assault minors. And he used this scheme to successfully groom and rape minor victims for years. (*Id.*)

McLaughlin started by casting a wide net on Snapchat using his "Lift11" and "Tech4cm" accounts to ensnare minors. (*Id.* at ¶¶ 11-13.) With well over 100,000 lines of chat messages between January 1, 2019, through April 16, 2023, the voluminous records show McLaughlin's script and scheme contacting minors, with almost all of the chats becoming sexual in nature. (*Id.*) McLaughlin's Snapchat accounts and cell phone contained thousands of sexually explicit images and videos depicting minors. (*Id.* at ¶ 13.) Although the full scope of McLaughlin's conduct is still under investigation, at this time it includes 26 identified minor victims, with ongoing efforts to identify other victims among the 200+ minors he was soliciting for online and in-person abuse via Snapchat and text messages. (*Id.* at ¶ 25.)

McLaughlin bragged that 11 to 12 years old was "the youngest ive raped" and that he "love[d] f**king young girls." (*Id.* at ¶ 86.) He was successful in manipulating minor girls and systematically broke down minor victims' boundaries almost with a sense of pride

3

in how persuasive he could be. Sometimes McLaughlin flattered them, and other times he gave them drugs, alcohol, vapes, and other gifts. McLaughlin even bragged about training and "breaking" girls down to other Snapchat users:

> McLaughlin: Taking a live video […] The other girls coming out soon. U can watch her. There learning lol. Young girls these days are so bad with big cock […] There really fun. They love to drink to […] I don't let them drink a lot. Yesslol. I do. They do anything I say. They hate getting spankings.
>
> Snapchat user: Damn I wanna see
>
> McLaughlin: strip them naked and slap thereass and p***y. U should get little girls to train there so fun. They need a mom. They won't listen to there real parents any more. Only me. I own 3.
> [*Sexually explicit images sent via chat*]
> I got 2 more I've f**ked. Just breaking them down tell they see I'm what they need.
> [*Video distributed depicting McLaughlin sexually abusing Minor Victim 2*]. (*Id.* at ¶ 87.)

McLaughlin pulled girls into his world and introduced them to his pronounced sexual interests in children, incest, bestiality, and BDSM. (*Id.* at ¶ 11.) Each of the 26 minor victims recounted different ways in which McLaughlin would abuse and exploit them. While their recounting had similar themes, it was clear McLaughlin used the minors for sexual gratification in different ways. At times he would use a dildo/prosthetic penis when he would assault girls. (*Id.* at ¶¶ 12, 16, 19, 25.) He would record his abuse and have girls act for the camera for his later consumption and distribution of the assault imagery. In his work truck, McLaughlin stored a predator kit stocked with flavored and sweetened alcohol and raspberry lubricant in a bottle shaped like a honey bear. (*See images below.*) McLaughlin's tactics also evolved over time to accommodate the large scope and scale of

his abuse. He went from targeting individual victims to pursuing a connection with a group of minor girls who could assist him in finding additional victims. (*Id.* at ¶ 25.)



*Images from McLaughlin's work truck in which he assaulted minors, depicting berry flavored alcohol and lubricant*

## 2. Producing and Distributing Child Pornography Depicting Minor Victims

McLaughlin produced child pornography depicting several minor victims. Sometimes McLaughlin directed minors to capture specific sexual content for his pleasure. Other times, McLaughlin would directly participate in sexual acts with minors in produced images and videos. For example, 15-year-old Minor Victim 1 and other minor victims were friends at a local high school and met McLaughlin online through other classmates. Minor Victim 1 recalled McLaughlin would send her "weird stuff" on Snapchat and ask her to do sexual things for money. (*Id.* at ¶ 14.) Eventually she met McLaughlin at his direction several times for sex. (*Id.* at ¶ 15.) She stated that McLaughlin was controlling and

manipulative. He would buy alcohol for her and her friends, and offered money for sex, including more money if Minor Victim 1 and her young friends all had sex with him together. (*See id.*) She told law enforcement that McLaughlin would drive her to have sex in parking lots in his work truck, including the Forest Lake Elementary School parking lot, an ice arena parking lot, and a local library parking lot. (*See id.*) One such occasion, McLaughlin recorded his sexual assault of Minor Victim 1 where he vaginally raped her, pulled her hair, and slapped her bare buttocks hard enough to leave a red mark. (*Id.* at ¶ 16.) McLaughlin then distributed this video and other videos depicting her rape to Minor Victims 11, 12, 15, and 22, in addition to other Snapchat users. (*Id.*)

With 14-year-old Minor Victim 2, McLaughlin increased his control and use of BDSM in his sexual abuse. In her interview, Minor Victim 2 recalled that the summer of 2022 was a difficult summer, during which she was suffering from a lack of self-worth and was drinking and using marijuana a lot. McLaughlin took advantage of Minor Victim 2's vulnerabilities and offered to spoil her, take her shopping, and offered her and her friends alcohol and marijuana if they performed sex acts on him. (*Id.* at ¶17.) McLaughlin sent Minor Victim 2 violent sexually explicit content, including videos depicting girls tied up having sex. (*Id.* at ¶ 18.) In other messages, McLaughlin made several comments about sexual abuse and control with Minor Victim 2, including that he could have sex with her when he wanted and would force her to engage in certain acts if she resisted. (*Id.*) Further, McLaughlin messaged Minor Victim 2, "I want to f**k you 'till you cry," and "I'm gonna leave bruises on your body." (*Id.*) On July 16, 2022, McLaughlin's messages displayed his intent to use and abuse Minor Victim 2: "Can i f**k my little slut. I miss that already [I

don't care] how sore u are." And on August 19, 2022, McLaughlin continued, "I love to hurt you. I want to watch u choke on my cock. Spit in ur face like the little worthless slut u are And force my big cock deep in ur p***y […] I'd have zero problem holding u down forcing you to f**k me."

The child pornography McLaughlin produced depicting Minor Victim 2 is violent. As are many other child pornography videos he produced. The videos depict McLaughlin orally and vaginally raping Minor Victim 2 while slapping her. (*Id.* at ¶ 19.) He is showing forcing the minor's head down on his prosthetic penis, while she gags. (*Id.*) Minor Victim 2 told Minor Victim 8 that McLaughlin was "rough" with her, slapping and biting her buttocks. McLaughlin admitted to distributing child pornography depicting his violent sexual assault of Minor Victim 2 to other minors and adult users on Snapchat.[2] (*Id.*)

3.  Drugs and alcohol

McLaughlin's use of alcohol and drugs was calculated and predatory. He relied on substances to weaken the minor victims' defenses. Additionally, because many of his victims were selected precisely because they were vulnerable, Mclaughlin knew he could use the promise of escape and numbing represented by such substances to bribe them to

---

[2] McLaughlin frequently used distribution of child pornography as a tool to entice more minors, expanding the purpose of the videos beyond his other clear motivation of generating trophies for his personal collection.14-year-old Minor Victim 14 confronted McLaughlin about his distribution of child pornography depicting Minor Victim 2, and he admitted that Minor Victim 2 had not consented to the distribution of these videos. (*See generally* PSR ¶ 25.) Minor Victim 14 rightfully worried, "how do [I know] you arnt showing pics and videos of me to other people[?]" McLaughlin responded with manipulation over the following days, including stating he wanted the 14-year-old to be his girlfriend. McLaughlin wrote, "to mess around with a little girl and teach her how to pleasure a huge cock is so hot."

engage in sexual activity, in a twisted quid-pro-quo scenario. To victims as young as 13-year-old Minor Victim 9, McLaughlin offered, "I got coke and X, Acid, Oxy, Xanax," and "money and weed." (*Id.* at ¶ 25.) Knowing her young age, McLaughlin offered these drugs in exchange for in-person sexual encounters.

McLaughlin would tell minors that he wished he could get them drunk and then have sex with them. He told Minor Victim 14 to sneak out to meet him and encouraged her to start drinking before he picked her up. McLaughlin also messaged the 14-year-old girl, "I wish I knew you at 12 so I could start eating your p***y. Maybe babysat you."

14- and 15-year-old Minor Victims 25 and 26 met McLaughlin on Snapchat. He asked to meet up with them, during which time he provided them alcohol. (*Id.*) Minor Victim 26 noted she got drunk but said Minor Victim 25 became "blackout" drunk. During that encounter, McLaughlin took advantage of their vulnerable state by vaginally raping both girls in and on his Mustang car. (*Id.*) The violent act was not enough—McLaughlin also recorded himself assaulting both girls in their compromised state on his cell phone.

### 4.  Violent Sexual Assaults

The inherent harms of McLaughlin's prolific production of child pornography and serial child rapes are self-evident regardless of the nature of the sex acts he committed. However, his offense conduct is further aggravated by the particular violence of his encounters with minors. For example, on one occasion, Minor Victim 1 and two of her minor friends (Minor Victims 11 and 22) went to a park in Wyoming, Minnesota, with McLaughlin. (*Id.* at ¶ 15.) He offered each girl $150 and a bottle of alcohol and took turns raping each girl on the soiled backseat of his work truck. (*Id.*) Minor Victim 1 recalled she

dreaded her "turn" as she sat in the front seat with her headphones on with her music turned up to a loud volume. (*Id.*) When it was Minor Victim 1's "turn" to be sexually assaulted, she recalled moving to the back seat, McLaughlin inserting his penis and fingers in her vagina, during which he "slapped [her] a lot." Minor Victim 1 stated she remembered that McLaughlin usually kept his pants on and pulled his penis out of a hole in his pants, and sometimes his penis did not feel real. (*Id.*) She also recalled that when McLaughlin assaulted her, he sometimes would strangle her, pull her hair, left red marks on her body from slapping her, and said "gross things" about being her "daddy." (*Id.*) When Minor Victim 1 intimated that she may contact the police when she wanted it to stop, McLaughlin told the minor, "but you liked it."

Also, 13-year-old Minor Victim 23 recalled meeting McLaughlin on Snapchat in the spring of 2023, which quickly progressed to McLaughlin directing her to send him child pornography. (*Id.* at ¶ 25.) On one occurrence, Minor Victim 23 agreed to meet McLaughlin for oral sex in exchange for $400. (*Id.*) She asked her friend Minor Victim 15 to join her. They got in his truck, and McLaughlin took Minor Victim 23 to the backset and began vaginally penetrating her. (*Id.*) She recalled, "it hurt a lot," and that as she was being sexually assaulted, she began "kicking the seat" to get Minor Victim 15's attention to interrupt what was happening. (*Id.*) Minor Victim 23 said, "we made eye contact, but she didn't realize what I was saying." When it was over, she recalled McLaughlin "pulled out a bunch of cash and said sorry," acknowledging vaginal intercourse was not arranged or discussed beforehand. (*Id.*)

Many minor victims tried to say no or stated that they felt they lacked the ability to say no to having sex with McLaughlin. McLaughlin exerted control and proceeded to rape reluctant and vulnerable minor girls anyway. For example, 14-year-old Minor Victim 4 has developmental and cognitive delays. (*Id.* at ¶ 22.) She met McLaughlin on Snapchat, and McLaughlin created a world in which she believed he was her boyfriend. In this world, McLaughlin pressured her to engage in sexual chats. In lieu of in-person sex with the minor on certain occasions, McLaughlin would direct Minor Victim 4 on what kind of content he wanted her to produce, writing, for instance, "Video chat me and finger your p***y." (*See id.*) He even went on to discuss bestiality with the minor, stating: "I no a girl who lets her dog f**k her […] its pretty cool […] I think its a good idea. She said it feels really good […] Would u d[o] that?" (*See id.*)

Around August 10, 2020, McLaughlin as "Jake" went to Minor Victim 4's house while her father was away at work. (*Id.* at ¶ 24.) Minor Victim 4 stated that she expected they would watch a movie. Instead, McLaughlin sat on the couch with Minor Victim 4 and her minor sister. McLaughlin then took Minor Victim 4's clothes off, pulled down his pants, and sexually assaulted her. (*Id.*) Minor Victim 4 recalled she told McLaughlin "no," but he continued assaulting her anyway. (*Id.*) Minor Victim 4 also recalled that her sister left and locked herself in their father's bedroom as this happened. McLaughlin directed Minor Victim 4's sister to join, but she did not. (*Id.*) Minor Victim 4 recalled that McLaughlin inserting his penis into her vagina hurt her. (*Id.*) Minor Victim 4 said she felt scared and was physically hurt after this assault. Later that night, McLaughlin messaged a

pseudo-apology for the assault: "Im sorry if u didnt want me f**king u that much […] I feel so close to u like we're brother and sister having sex its so great."

     5.  <u>Incest</u>

McLaughlin is the father of two young girls. On July 8, 2021, McLaughlin messaged an unidentified user on Snapchat, "I want a daughter so I can f**k her." (*Id.* at ¶ 86.) Worryingly, McLaughlin referred to incest and sexually abusing his daughters in his scheme to exploit minor victims. For example, in 2020, McLaughlin messaged 13-year-old Minor Victim 5 while purporting to be 16-year-old "Jake," seeking child pornography from her and attempting to groom her for in-person sexual contact. (*See id.* at ¶ 25.) McLaughlin claimed he had previously dated a 13-year-old, but the "relationship" ended because of "something about my dick size." As the conversation continued, McLaughlin directed Minor Victim 5 to send him explicit images, which she did. Later, McLaughlin asked if she if she would consider "f**king my older brother or my dad." McLaughlin continued, "we want to jackoff to u. Send more pics my dad wants new on[es]." At points, Minor Victim 5 declined, stating she was "just drained [right now]." However, McLaughlin persisted, "we just want to jackoff to u." On September 15, 2020, the conversation continued. After more pressure from McLaughlin for child pornography, Minor Victim 5 wrote, "[g]etting ready for school but when I get home I'll try to take a couple pics."

McLaughlin continued to pressure Minor Victim 5 to meet up for sexual conduct while referencing his interest in incest. He messaged Minor Victim 5, "ever[y] girl should start f**king at 12. If I have kids 12 is the ag[e] there having sex. Even if im f**king my daughter or let my son and daughter f**k." (*Id.*) McLaughlin then pressured Minor Victim

5 for more sexual material, claiming his "sister" sends "better nudes then u." (*Id.*)

Disturbingly, McLaughlin weaponized the specter of an abusive father figure as part of his varied methods to induce children into sending him child pornography. On September 18, 2020, McLaughlin discussed meeting up, writing, "I cant wait to watch my dads cock go in u […] My dad would love some pics of u." Minor Victim 5 then sent two sexually explicit images, including an image depicting her posing with her anus and vagina fully visible. McLaughlin responded, "f**k." About ten minutes later, McLaughlin pressured Minor Victim 5 for more, claiming, "my dads mad," and to "send him pics we cant risk not meeting. Just make him happy. Do anything he wants." Around September 23-25, 2020, it appears McLaughlin coordinated meeting Minor Victim 5 at a nearby hotel for sex with him and who he purported to be his father. As the meeting approached, Minor Victim 5 backed out stating that some "family things came up."[3] (*See id.*)

McLaughlin ultimately targeted 200+ minors in the records from 2019 onward. (*Id.*) Efforts to identify McLaughlin's victims continue. Based on information currently known, McLaughlin produced, received, and distributed child pornography related to at least 24 minor victims. He also possessed thousands of images and videos of child pornography, most of which are files that he enticed minors to send him or that he produced. Additionally, McLaughlin sexually assaulted at least 12 minor victims, although additional disclosures are being made in this ongoing process.

---

[3] McLaughlin pushed his fixation on incest onto adults he met on Snapchat as well. In one chat where McLaughlin was coordinating meeting an adult woman for sex, the woman disclosed that she had a six-year-old son. McLaughlin responded that she should perform oral sex on the young child, declaring that a mother should "suck there [sic] sons."

6.  <u>Psychosexual Evaluation</u>

McLaughlin self-commissioned a psychosexual evaluation after his guilty plea in this case. The Government received a copy of the evaluation report on February 27, 2024. (*See* ECF No. 39.) ████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████ ██ █

████████████████████████████████████

████████████████████████████████████

███████████████

**B.     Ongoing Victim Impact**



*Images of an unidentified minor victim's cry for help in their notebook (pages away from high school math homework) discovered in McLaughlin's work truck*



Over a dozen victims and their families have spoken to the U.S. Attorney's Office and FBI about McLaughlin's reprehensible conduct. To date, six minor victims and guardians have provided impact statements for the Court's consideration, which the United States will submit with this sentencing memorandum. More victims and their families described wanting to submit a statement or considered asking to address the Court at sentencing, but have indicated they are not able to do so citing fear, trauma, anguish, worry about exposure despite reassurances about confidentiality, and wanting to avoid painful memories, among other reasons. Additionally, the lasting impacts of shame, trauma, and humiliation related to this offense conduct, compounding other vulnerabilities McLaughlin intentionally exploited and worsened in many of his minor victims, make participation extremely painful for many minor victims and their families. Nonetheless, these victims and their families echoed many of the sentiments briefly described below.

The prolific and persistent nature of McLaughlin's deception and abuse has been particularly upsetting to victims. One of the minor victims remarked that she believed McLaughlin would never stop preying on minors, even with law enforcement contact. Another minor victim reflected on how McLaughlin "took advantage of [her] young mind," and that "he is a monster . . . his actions will forever haunt me." The grandmother of one victim emphasized, "[t]he nightmare of sexual abuse never goes away for victims. EVER. They can get better with help from therapy, but the feeling that someone as disgusting as [McLaughlin] touched them will never stop making them ill."

The ongoing trauma bleeds into minor victims' personal lives in lingering ways. The mother of one minor victim reflected that her daughter, "doesn't talk to anyone

14

anymore and is very guarded." The mother notes a common issue that many of the minor victims are grappling with: "She is embarrassed and blames herself for what happened. She has isolated herself from her family and everyone else in her life except for one of her good friends. She feels like no one else understands so she doesn't open up."

Many guardians of the minor victims have told the United States that they want to see McLaughlin "locked away for life." As one parent noted, "I've always believed in second chances, but this was not a one-time thing. . . . He needs to be punished, but also locked away so he can't hurt anyone else."

### C.     The Charges, the Plea Agreement, and the Guidelines Calculations

On October 11, 2023, McLaughlin pled guilty to five counts in an information pursuant to a plea agreement.[5] (ECF Nos. 21, 23.) McLaughlin pled guilty to two counts of production of child pornography, one count of receipt of child pornography, one count of distribution of child pornography, and one count of coercion and enticement of a minor. (ECF No. 23.)

On January 25, 2024, McLaughlin's final Presentence Report was issued. (ECF No. 37.) Consistent with the parties' plea agreement, the PSR finds a total adjusted offense level of 43, a criminal history category of I, and an advisory imprisonment range of life. (PSR ¶ 131.) However, the PSR added an enhancement not contemplated by the parties' agreement—a two-level increase under U.S.S.G. § 4A1.1(b) related to Minor Victim 4 being a vulnerable victim due to her cognitive delays. (*Id.* at ¶ 74.) The Government objects

---

[5] On July 17, 2023, McLaughlin was originally charged by complaint with four counts of child pornography and child exploitation crimes. (ECF No. 2.)

to the enhancement consistent with its obligations under the plea agreement, because the PSR differs from the parties' stipulations in the plea agreement regarding the application of specific offense characteristics. Beyond this, the Government agrees with the Guidelines calculations and conclusions detailed in the PSR.

The recommended term of imprisonment under the Guidelines is a life sentence. However, the parties negotiated to a range varying downward from those Guidelines as part of McLaughlin's plea and willingness to spare minor victims the trauma of a contested trial. McLaughlin agreed to argue for a sentence no lower than 240 months' (20 years) imprisonment, and the Government agreed to argue for a sentence no higher than 420 months' (35 years) imprisonment. (Plea Agreement ¶ 12.)

## II.   THE GOVERNMENT'S SENTENCING RECOMMENDATION

### A.   An Examination of the § 3553(a) Factors Demonstrates That a Sentence of 420 Months' Imprisonment Is Necessary.

The Court employs the U.S. Sentencing Guidelines as "the starting point and the initial benchmark" in imposing its sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). Although the Guidelines are advisory, the Court must "remain cognizant of them throughout the sentencing process." *Id.* at 50 n.6. Indeed, a court may "'rest [its] decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case' if the court finds that the case before it is typical." *United States v. Robinson*, 516 F.3d 716, 718 (8th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 357 (2007)). In addition to considering the Guidelines, § 3553(a) requires the Court to analyze a number of factors,

including the nature and circumstances of the offense, the history and circumstances of the defendant, the need for the sentence to reflect the seriousness of the offense, the need for deterrence, the need to protect the public from further crimes of the defendant, and the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a).

A sentence of 420 months of imprisonment followed by lifetime supervised release is a slight variance from the Guidelines range of life, and is sufficient, but not greater than necessary, to satisfy the considerations of § 3553(a).

        1.   <u>The Nature and Circumstances of the Offenses, and the Impact on the Victims.</u>

McLaughlin's manipulation and predation is far beyond that of a typical child exploitation defendant. Here, McLaughlin coordinated on a massive scale to constantly cultivate relationships with children online to facilitate his manipulation of them both online and in person. That McLaughlin had tactics and scripts built up specially tailored to whether he was preying on groups of minors who were friends or preying on individual victims speaks volumes of the depths of his deliberateness and the danger he poses to children. McLaughlin crafted fake identities and personas to capitalize on his access to and knowledge of children to exploit and denigrate them for his own pleasure. McLaughlin succeeded in producing or receiving child pornography from most of his identified 26 victims. He distributed numerous videos and images of child pornography, some of which was self-produced and included depictions of him sexually assaulting minor victims. And McLaughlin sexually assaulted almost half of the identified minor victims, often with

violent sex acts that hurt the minor victims physically and traumatized them psychologically.

When considering the victims, one of the most heartrending aspects of the impact of McLaughlin's crimes is that it capitalized on minor victims' deep and exceedingly human desire for connection—especially in the midst of the COVID-19 pandemic and isolation many children faced. Snapchat and other online messaging apps were lifelines for many minors and a way they could socialize while sheltering at home with online or hybrid school. McLaughlin made over two dozen minors believe they were forging a meaningful friendship or romantic relationship with "Jake." McLaughlin then preyed upon his minor victims' desire for connection to obtain intimate, sexually explicit images and videos of them. He directed them on what he wanted to see. And the minors obeyed either due to his coercion or because he offered to pay them with money, drugs, alcohol, or other gifts.

The age range of the minor victims—predominantly between 11 to 16 years old—is an aggravating factor. That McLaughlin sexually exploited and abused children at this crucial juncture in their lives, just as they were beginning to explore healthy romantic and sexual attachment to their peers, makes his criminal conduct even more devastating to the victims. There is ongoing trauma and will likely be lasting impacts on the lives of 26 minor victims here. Child sex abuse "is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *See Kennedy v. Louisiana*, 554 U.S. 407, 468 (2008) (Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting) (citation omitted).

These factors alone would warrant a lengthy sentence. Even more troubling is that exercising his power and control over his victims appears to have been a significant part, or the core, of McLaughlin's pleasure. This is evident in McLaughlin sending bondage pornography to minors; bragging to Snapchat users he was a "daddy" who "owned" minor victims that he broke down; telling minors, "I want to rape u so bad"; and telling Minor Victim 2, "I want to f**k you 'till you cry," and "I'm gonna leave bruises on your body."

Related to this was McLaughlin's indifference for the physical and mental impacts of his abuse. Aside from the clear violence McLaughlin sought to inflict through slapping, grabbing, and pulling hair, minors recall that McLaughlin could not even be bothered to wash his hands dirty from work, jamming his "gross" hands and fingers inside their bodies. Multiple girls did not know McLaughlin was using a prosthetic penis and recounted how McLaughlin's penis "hurt" when he would penetrate them forcefully. Some would disassociate until it was over. Multiple minor girls talked about experiencing pain internally after his assaults, including needing treatment for a urinary tract infection. One minor victim reported that a doctor discovered vaginal tearing and scar tissue related to McLaughlin's sexual assaults, for which she was prescribed medicine.

It is axiomatic that hands-on sexual abuse inflicts upon its victim immense and long-lasting harm. That the abuse is inflicted on a child and then recorded and memorialized in child pornography adds devastating dimensions to the harm inflicted on rape victims. As the Supreme Court explained, "the victim's fright, the sense of betrayal, and the nature of her injuries caused more prolonged physical and mental suffering than, say, a sudden killing by an unseen assassin. The attack was not just on her but on her

childhood. . . . Rape has a permanent psychological, emotional, and sometimes physical impact on the child. . . . We cannot dismiss the years of long anguish that must be endured by the victim of child rape." *Id.* at 435 (citing various studies); *see also United States v. Pugh*, 515 F.3d 1179, 1197-98 & n.12 (11th Cir. 2008) (citing extensive congressional findings about the harm caused by child pornography and recognizing that "[i]n light of these detailed legislative findings and numerous legislative enactments, we cannot help but underscore the seriousness of this crime"). The impacts on the victims in McLaughlin's case mirror what other courts have seen in child exploitation cases: feelings of guilt and inferiority, relational issues with family and friends, struggles in school, unprovoked crying, dissociation, depression, insomnia, nightmares, and self-destructive behavior, including an increased risk of self-harm. These feelings and trauma responses belie the deeper truth of McLaughlin's conduct—he was careful, practiced, and highly skilled at manipulating children to get what he wanted while concealing his true self. That McLaughlin focused on children who knew each other in local communities has compounded his victims' misery—trapping them in silence for fear of risking further embarrassment with their family, friends, or classmates. Indeed, multiple victims never told their families what they had suffered until the FBI came to their homes to investigate.

A considerable term of imprisonment of 420 months is necessary to address the nature and circumstances of McLaughlin's offenses, aggravating factors, and the impact on the 26 minor victims and their families.

2.    <u>McLaughlin's History and Characteristics.</u>

Nothing about McLaughlin's history and characteristics mitigates against a sentence of 420 months; if anything, his history and characteristics underscore why a sentence of that length is necessary. While McLaughlin has minimal criminal history, it is disquieting that his encounter with the criminal justice system comes from being caught in a clear, multi-year pattern of exploiting and assaulting countless children that preceded this case. McLaughlin is not a first-time, low-end offender. He is simply a first-time federal defendant with, by far, one of the worst online and hands-on child exploitation cases this District has seen in recent history.

By his mid-twenties, McLaughlin has already established a long history of daily seeking out children to exploit for images of their sexual abuse or in-person abuse. Under these circumstances, his relative youth is unquestionably an aggravating factor (and indeed, was a tool he used in his scheme). ████████████████████████ ████████████████████████████ ████████████████████ Research has consistently shown that a younger sex offender with violent and antisocial tendencies is significantly more likely to reoffend than an older one. *See* R. Karl Hanson & Kelly E. Morton-Bourgon, *The Characteristics of Persistent Sexual Offenders: A Meta-Analysis of Recidivism Studies*, 73 J. of Consulting & Clinical Psych. 1154, 1154-1163 (2005).

The Government does not dispute that McLaughlin may be facing challenges due to his mental health. However, McLaughlin has experienced the support of both parents, family, and friends throughout his life. He had stable employment, including reporting

earning as much as $8,000 a month through his mobile mechanic business. To the extent McLaughlin may seek to explain his offense conduct as the product of his own alcohol abuse or ████████████████████ that would fly in the face of the substance of his offense conduct. McLaughlin is a serial predator with an all-consuming focus on coercing minors into sending or creating child pornography and engaging in abusive sex acts with him. The well-over one hundred thousand lines of Snapchat message history shows McLaughlin chose to hunt down minors and follow threads to the most susceptible victims on a daily basis.

Nonetheless, the proposed sentence does constitute a downward variance in recognition of McLaughlin's willingness to spare the victims further suffering by pleading guilty pre-indictment. Accordingly, the Government's recommendation factors in all bases for leniency that merit consideration in this case. McLaughlin's history and characteristics compel a sentence of 420 months' imprisonment.

3. <u>To protect the public from Mclaughlin, provide just punishment, and promote respect for the law.</u>

McLaughlin's panoply of child exploitation offenses against 26 minor victims shows a heightened need to protect the public, provide appropriate punishment, and



promote respect for the law. McLaughlin had no interest in ever voluntarily ending his pattern of exploitation. He messaged 12-year-old Minor Victim 9 his viewpoint: "[a]ge is just a number . . . F**k the law." But for the bravery of minor victims reporting McLaughlin and law enforcement intervention, he would have never stopped. Even after being told by victims they were going to the police, he continued his scheme to sexually exploit and use minors. One minor victim's mother expressed to the Court in her victim impact statement, "[h]e needs to be punished, but also locked away so he can't hurt anyone else."

Additionally, the Court must consider "the 'just deserts' concept, which carries the need for retribution, the need to make the punishment fit the crime, and the need not just to punish but to punish justly." *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). "Because the punishment should fit the crime, the more serious the criminal conduct is the greater the need for retribution and the longer the sentence should be. The seriousness of a crime varies directly with the harm it causes or threatens. It follows that the greater the harm the more serious the crime, and the longer the sentence should be[.]" *Id.* at 1206-08 (citation omitted) (holding that the district court's sentence of 17.5 years was substantively unreasonable, remarking that such sentence, "if all of it were to be served, would amount to only 4 months and a week for each of the 50 distinguishable victims that [the defendant] raped, sodomized, or sexually tortured"). In her victim impact statement, Minor Victim 2 asked the Court to "bring justice to not just me," but for all the minor victims that have been affected by McLaughlin's predation.

4.    Specific and General Deterrence.

Deterrence of future offenses against children is an important consideration for the Court. Congress and courts around the country have made clear that both general and specific deterrence are important sentencing goals in child pornography cases. "The more serious the crime and the greater the defendant's role in it, the more important it is to send a strong and clear message that will deter others." *Irey*, 612 F.3d at 1212; *see Ferguson v. United States*, 623 F.3d 627, 631-32 (8th Cir. 2010). "[I]mposing a lighter sentence on one convicted of a child pornography offense 'tends to undermine the purpose of general deterrence, and in turn, tends to increase (in some palpable if unmeasurable way) the child pornography market.'" *Irey*, 612 F.3d at 1211 (citation omitted).

The Government submits that McLaughlin presents a high risk to reoffend given the nature of his sexual abuse and child pornography he created, and ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ Additionally, a longitudinal study of 341 convicted child molesters found that for individuals who viewed deviant pornography (defined as pornography containing children and/or violence), the odds of sexual recidivism increased by 233% when compared with those who did not view deviant pornography. Kingston, et al., *Pornography Use and Sexual Aggression: The Impact of Frequency and Type of Pornography Use on Recidivism Among Sexual Offenders*, 34 Aggressive Behavior 341, 348 (2008). Such deviant forms of pornography, "help shape an individual's fantasies, perceptions, rationalizations, and deeper core beliefs" and "fosters the progression toward reoffending, regardless of the earlier existence of

historical risk factors." *Id*. at 349. And individuals like McLaughlin who have committed "both a child-pornography offense and a hands-on sex crime [are] more likely to commit a future crime, including another hands-on offense, than a defendant who has committed only a child-pornography offense." *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011).

The Court is in a position to send a strong message to predators like McLaughlin who seek and derive sexual pleasure from depictions of child sexual abuse. A sentence of 420 months' imprisonment is appropriate as both an individual deterrent and a general deterrent.

 5.  420 Months' Imprisonment Will Not Create Unwarranted Sentencing Disparities.

A 420-month sentence is appropriate punishment and would not create significant disparities among defendants with similar records. The pattern that McLaughlin has followed, and which is now before this Court, involves his hands-on abuse of 26+ minor victims followed by his acts to capture the abuse on video or otherwise obtain imagery reflecting child sexual abuse from minors. In both this District and Circuit, defendants that produce child pornography and commit hands-on sexual abuse with multiple victims have been sentenced to over 30 years and more followed by a lifetime term of supervised release, as detailed below. *See, e.g.*, *United States v. Raplinger*, 555 F.3d 687, 689-95 (8th Cir. 2009) (affirming as reasonable a 457-month sentence where the 34-year-old defendant enticed a single 15-year-old victim into a long-term sexual relationship, produced child

25

pornographic photos of her, and introduced her to other adults who had sexual contact with her).

In *United States v. Ottinger*, Case No. 21-cr-209 (WMW), ECF No. 54 (D. Minn. Apr. 28, 2022), the defendant engaged in a child exploitation and sextortion scheme that targeted dozens of minor and adult victims by using false online personae. The defendant, a former substitute teacher, threatened to disseminate the images and videos of his victims in order to extort more images and videos. In that case, the Court sentenced the 25-year-old defendant to 480 months in prison followed by 25 years of supervised release. The defendant's conduct at issue in that case spanned almost a decade, but McLaughlin's criminal activity in this case was unrelenting, involved hands-on sexual abuse, and involved more victims in a shorter period of time. On balance, McLaughlin's deliberate targeting of hundreds of children, of which we have identified 26 minor victims, using dishonest and abusive tactics calls for a sentence similar to what Ottinger received.

Contrastingly, in *United States v. Fortier*, No. 17-cr-96 (PJS/DTS), ECF No. 191 (D. Minn. Dec. 29, 2022), this Court sentenced Scott Francis Fortier to a lower sentence of 300 months' imprisonment following his conviction at trial on one count of possession of child pornography and one count of production of child pornography. Fortier was a camp counselor who spent time with minor girls at his former place of employment. Fortier groomed and assaulted a 15-year-old victim and a 16-year-old victim, creating child pornography depicting the encounters. While reprehensible, by all measures, Fortier was a substantially less prolific predator than McLaughlin. McLaughlin victimized 200 minor victims, of which 26 have been identified—far more victims than Fortier. McLaughlin

bragged about raping children as young as 11-12 years old and sought out violent sexual encounters with girls—recording himself slapping them, forcing himself inside of them, and causing them pain in the process. McLaughlin also coerced and raped a minor victim with cognitive delays, despite her saying "no" to him. He used alcohol and drugs to trap minors in compromising positions and facilitate his assaults. He introduced minors to his sexual interests in incest and bestiality, and disturbingly claimed (as the father of two young girls), "ever[y] girl should start f**king at 12. If I have kids 12 is the ag[e] there having sex. Even if im f**king my daughter or let my son and daughter f**k." McLaughlin's conduct calls for significantly more time than Fortier—420 months' imprisonment.

A sentence here of 420 months' imprisonment followed by a lifetime term of supervised release would avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(6).

### B.     A Supervised Release Term of Life Is Appropriate Based on McLaughlin's Criminal Conduct.

The Government requests that the Court impose a lifetime term of supervised release, as is counseled by the U.S. Sentencing Guidelines and ███████████████ ████████████████████████████████████ Supervised release "is a unique method of post-confinement supervision," *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991), that "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). It is "congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful

transition from the prison to liberty." *Johnson v. United States*, 529 U.S. 694, 708-09 (2000).

McLaughlin's child exploitation crimes fall into a discrete group of offenses for which Congress authorized a maximum supervised release term of life. *Id.* § 3583(k). Indeed, the Guidelines recommend district courts to impose the maximum supervised release term available for repeat and dangerous sex offenders like McLaughlin. *See* U.S.S.G. § 4B1.5, cmt. 5; U.S.S.G. § 5D1.2(b). The life term recommendation is rooted in the recognition that recidivism rates for sex offenders do not appreciably decline as offenders age, especially where someone has committed prolific abuse. *See, e.g.*, H.R. Rep. No. 107-527, at 2 (2002). Additionally, passage of 18 U.S.C. § 3583(k) recognized the long-standing concerns regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison.

A life term of supervised release is necessary to protect the public from McLaughlin and to ensure his compliance with the law. McLaughlin poses a serious danger to children and is highly capable of deception on a large scale. That his offenses began through online obfuscation further points to the need for intensive supervision with special conditions to ferret out impermissible internet activity. Multiple minor victims have expressed concerns about protecting other minors from McLaughlin. When meeting with the Government, one minor victim remarked that she believed McLaughlin would never stop his predatory behavior. Also, Minor Victim 1 wrote in her victim impact statement, "[a]fter knowing

Caleb for a period of time, I can confidently say he is a threat to every under age girl he encounters. He is ruled by his own selfish and twisted desires and defined by his daily choice to feed into her perversion at any cost."

The prolific nature and extended duration of McLaughlin's offense conduct counsels for a lifetime term of supervision. The Government does not make this request lightly and understands that lifetime supervision will pose resource demands on the U.S. Probation Office. Lifetime supervision is nonetheless warranted in this case due to the severity of McLaughlin's child exploitation offenses and has been issued before in this district in a similarly prolific, although wholly online, child exploitation case. *See, e.g.*, *United States v. Vang*, Case No. 22-cr-98 (ECT), ECF No. 45 (D. Minn. Sept. 14, 2022) (imposing lifetime supervision in multi-victim child exploitation and sextortion case in which the defendant pled guilty to an information).

Additionally, the Court should impose special conditions tailored to McLaughlin's offenses. Special conditions of supervised release are appropriate if "reasonably related" to the applicable sentencing factors described in 18 U.S.C. §§ 3583(d)(1), 3553(a), and involve "no greater deprivation of liberty than is reasonably necessary" to achieve the purposes of supervision. 18 U.S.C. § 3582(d)(2). Given the nature of the offenses, the Court should require McLaughlin to register as a sex offender, participate in sex offender treatment programming, and restrict his access to electronic devices and the internet. Additionally, the special conditions should restrict his access to minors and include an order not to contact any victims of the offenses and conduct to which he pleaded guilty in the plea agreement (which applies to identified and unidentified victims).

29

C.      **Restitution.**

Restitution is mandatory in this case and should be ordered. (PSR ¶¶ 27, 145; Plea Agreement ¶ 14; 18 U.S.C. § 3663A.) In his plea agreement, McLaughlin acknowledged that 18 U.S.C. §§ 2248, 2259, and 3663A apply to his offenses. (Plea Agreement ¶ 14.) He also agreed to pay restitution to all of the victims of his crimes. (*Id.*) To date, the Government has sent notices to all victims who have opted in to receiving notifications regarding restitution. After following up with those who received notices, the Government has received two restitution requests with support from two of McLaughlin's minor victims, totaling $16,673.81. No additional claims are anticipated.

The parties anticipate filing a stipulation regarding restitution prior to sentencing. The United States requests that the Court order McLaughlin to pay restitution in the amount of $16,673.81 to two of his minor victims for the harm they have suffered as a result of his criminal conduct.

D.      **Amy, Vicky, and Andy Child Pornography Victim Assistance Act ("AVAA") Assessment.**

The AVAA created a special assessment for defendants convicted of child pornography crimes. 18 U.S.C. § 2259A(a). These assessments support the Child Pornography Victims Reserve Fund ("CPVRF"), from which some victims can elect to receive compensation in addition to, or in lieu of, restitution owed to them individually. *See* 18 U.S.C. § 2259(d). Congress made clear that its intent in passing the AVAA was "that victims of child pornography be compensated for the harms resulting from every

perpetrator who contributes to their anguish." PL 115-299, December 7, 2018, 132 Stat. 4383.

Pursuant to the AVAA, the Court shall order McLaughlin to pay an assessment of not more than $50,000. 18 U.S.C. § 2259A(a)(3); (*see* PSR ¶ 73.) In determining the amount to assess, the Court should consider the factors set forth in §§ 3553(a) and 3572. 18 U.S.C. § 2259A(c).

The Government recommends that the Court impose an AVAA special assessment of $5,000 on McLaughlin. Such an assessment is necessary to ensure that the CPVRF is available to assist the victims of child pornography in what is often a life-long battle to recover. *See* 18 U.S.C. § 3553(a)(7). Although $5,000 represents a financial burden on McLaughlin, it is not an unjust one, especially since this amount may be collected over time and be adjusted if McLaughlin's financial circumstances do not allow for payment. *See* 18 U.S.C. §§ 2259A(d)(1), 3572(a)(1), 3572(d). The Government asks that the Court make any AVAA assessment collectable in monthly payments of $50-$100 and order that it come due only after McLaughlin satisfies his mandatory special assessment under 18 U.S.C. § 3013 and restitution. *See* 18 U.S.C. § 2259A(d)(2). *See, e.g.*, *United States v. Odegaard*, Case No. 21-cr-272 (PJS) (D. Minn. May 10, 2022) (sentencing judgment for defendant who pled guilty to one count of possession of child pornography pursuant to an information, in which he was sentenced to a $17,000 AVAA assessment and $5,000 JVTA assessment, in addition to restitution).

E.      Justice for Victims of Trafficking Act ("JVTA") Assessment.

McLaughlin is also subject to a special assessment of $5,000 per count under the JVTA. 18 U.S.C. § 3014 (amended by PL 117-180, Sept. 30, 2022, 136 Stat. 2133); (*see* PSR at ¶ 72.) Assessments under this statute provide monetary support for the Domestic Trafficking Victims' Fund ("DTVF"), which in turn provides grants and programming that assist victims of human trafficking, child exploitation, and child abuse. *See* 18 U.S.C. §§ 3014(c), 3014(e). Pursuant to the JVTA, the Court must impose this assessment on any "non-indigent person" convicted of a child exploitation crime, including production of child pornography. 18 U.S.C. § 3014(a)(3). In *United States v. Kelley*, 861 F.3d 790 (8th Cir. 2017), the Eighth Circuit fashioned a standard for assessing "non-indigency." *See id.* at 799-802. It directs courts to look at both a defendant's current assets and his future earning potential. *See id.* at 801-02. Under this standard, McLaughlin is not indigent, and the assessment should apply.

The Government does not dispute that McLaughlin is currently indigent. He has no appreciable assets, claims no financial interest in his two companies, and has been incarcerated since July 2023. However, given his work history as a skilled mechanic and age, he maintains a future earning potential that precludes a finding of indigence for purposes of § 3014. If the Court imposes the Government's recommended sentence of 420 months, McLaughlin will be released with many years of earning potential ahead of him. His past employment records show that he is hard-worker capable of making a decent income, earning as much as $8,000 a month through his mobile mechanic business. (*See id.* at ¶¶ 119-122.) Moreover, a $5,000 obligation is not a debt that would significantly

impact McLaughlin's ability to support himself, but is a meaningful amount and necessary to provide support to victims of crimes like those he committed. Assuming the Court imposes the JVTA assessment, the Government asks that it come due only after McLaughlin satisfies any restitution and AVAA assessment and be payable in monthly installments of $50-$100. *See* 18 U.S.C. § 3014(b).

## III.   CONCLUSION

For the reasons set forth above, the United States respectfully recommends that the Court impose a sentence of 420 months' imprisonment, followed by a life term of supervised release with special conditions to follow. The United States further requests that the Court order the defendant to pay restitution and AVAA and JVTA special assessments. The recommended sentence is warranted given the breadth and severity of the defendant's conduct. No child is safe from McLaughlin's predation, and a sentence of 420 months' imprisonment is essential to protecting them.

Dated: March 4, 2024                         Respectfully submitted,

                                             ANDREW M. LUGER
                                             United States Attorney

                                             *s/ Hillary A. Taylor*
                                      BY:    HILLARY A. TAYLOR (#0398557)
                                             RACHEL L. KRAKER (#0389380)
                                             Assistant United States Attorneys